AUSAs: Brandon C. Thompson; Ni Qian

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**25 MAG 1968**

UNITED STATES OF AMERICA

v.

CHANGLI LUO
    a/k/a "Sophia Luo,"

               Defendant.

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 873,
1519, & 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

LISA SCAGLIONE, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
**(Destruction, Alteration or Falsification of Records in Federal Investigations)**

1. On or about May 28, 2025, in the Southern District of New York and elsewhere, CHANGLI LUO a/k/a "Sophia Luo," the defendant, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and in contemplation of such a matter and case, to wit, LUO concealed multiple electronic devices, including one cellular phone and two flash drives, within a container of sanitary products and another cellular phone inside of a clothing hamper, when she knew that the FBI was attempting to enter her residence for the purpose of executing search warrants.

(Title 18, United States Code, Section 1519.)

**COUNT TWO**
**(Blackmail)**

2. On or about March 29, 2025, in the Southern District of New York and elsewhere, CHANGLI LUO a/k/a "Sophia Luo," the defendant, did knowingly demand money and a thing of

value, namely $50 million dollars, from a victim ("Victim-1"), under a threat of informing and as

a consideration for not informing against a violation of a law of the United States, specifically

bribery and honest services fraud, in violation of 18 U.S.C. §§ 201, 666, and 1346.

(Title 18, United States Code, Section 873 & 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

### LUO's Blackmail of Victim-1

3.    Based on my review of transcripts of grand jury testimony and other evidence submitted

to the grand jury by Victim-1, I have learned the following, in substance and in part:

a.        In or around November 2022, Victim-1 met CHANGLI LUO, a/k/a "Sophia Luo,"

the defendant.  After a handful of in-person meetings, in or about June 2023, LUO and Victim-1

had an intimate sexual encounter (the "Sexual Encounter").

b.        In or about May 2024, LUO sent two letters to Victim-1 via iMessage, accusing

Victim-1, among other things, of having "misled" LUO in order to have sex with her, and, in the

alternative, having sex with LUO while she was mentally incapacitated or mentally disabled.  LUO

stated in these letters that her "home has cameras," and that "[e]verything [Victim-1] did was

caught on camera," which LUO will expose to "mass media," if Victim-1 did not apologize.  In

the second letter, LUO stated that "anyone, whoever they are, who violates" laws such as "sex

crime," "bribery," and other crimes, "will eventually face judgment," and then provided Victim-1

with the information for a certified mediator.

c.        In or about June 2024, Victim-1 agreed to enter into mediation with LUO.

d.        Though Victim-1 denies LUO's allegations, Victim-1 has indicated that Victim-1

believed that entering into mediation with LUO would avoid harassment of Victim-1's family and

potential public embarrassment.  Victim-1 entered into a settlement agreement with LUO, in which

Victim-1 agreed to pay LUO a sum of money, and Victim-1 made an initial payment to LUO as agreed.

     e.     Despite the settlement agreement Victim-1 and LUO had entered into, in or about January 2025, LUO conveyed to Victim-1 through the mediator a list of demands and threats.  In substance and in part, LUO demanded $1.215 billion dollars, or else she threatened she would, among other things, report criminal acts to "government offices," including a federal agency related to one of Victim-1's businesses.

4. Based on my review of an email exchange between an attorney who represented CHANGLI LUO, a/k/a "Sophia Luo," the defendant, and Victim-1's attorney, provided by Victim-1's attorney, I learned the following in substance and in part:

     a.     On or about April 1, 2025, Victim-1's attorney sent an email to LUO's attorney to confirm that the content "reflects what [LUO] directed [LUO's attorney] to communicate through [Victim-1's attorney] to Victim-1," which email contained, the following in substance and in part:

     i.     LUO's monetary demand changed to $50 million dollars.

     ii.     If Victim-1 does not take "responsibility," LUO is determined to "destroy" Victim-1.

     iii.     LUO had multiple cameras in the apartment where the Sexual Encounter occurred and LUO has at least two videos and pictures of the Sexual Encounter, which she will provide to others absent a resolution.

     iv.     Further, absent resolution, LUO was prepared to report LUO's allegations to "criminal investigators," Victim-1's business partners and "the federal government."

b.      Later on the same day, LUO's attorney confirmed the accuracy of this summary of their conversation, and noted that LUO had instructed LUO's attorney to convey this message to Victim-1 through counsel on March 29, 2025.

5.   Based on my conversation with Victim-1's attorney, I understand that Victim-1 did not pay the $50 million dollars demanded by CHANGLI LUO, a/k/a "Sophia Luo," the defendant, in the message conveyed by her attorney.

6.   Based on my review of law enforcement records, I learned that on or about April 5, 2025, someone with the name "Sophia L," and a particular Gmail email account (the "LUO Gmail Account"), using an Internet Protocol address which resolves to a location in Manhattan, New York, submitted an online tip regarding Victim-1 to the FBI, claiming that Victim-1 had committed bribery of government officials.

7.   Based on my review of Google records, I know that the Google Pay account associated with the LUO Gmail Account is subscribed to in the name of "Changli Luo."

8.   Based on the foregoing, I respectfully submit there is probable cause to believe that on or about March 29, 2025, CHANGLI LUO, a/k/a "Sophia Luo," the defendant, caused her attorney to demand payment of $50 million from Victim-1 in exchange for LUO's agreement not to report a purported federal crime, namely, allegations of bribery of government officials.

### LUO Obstructs Law Enforcement's Investigation and Conceals Evidence

9. Based upon my participation in this investigation and my conversations with law enforcement officers, I know the following:

a.   On or about May 27, 2025, the Honorable Robyn F. Tarnofsky, U.S. Magistrate Judge for the Southern District of New York, authorized search warrants to search the person of CHANGLI LUO, a/k/a "Sophia Luo," the defendant, and the apartment (the "LUO Residence") in which she resides (the "Search Warrants").

4

b.  On or about May 28, 2025, an FBI search team arrived at the LUO Residence at approximately 6:10 a.m. for the purpose of executing the Search Warrants.

c.  Between approximately 6:17 a.m. and approximately 6:33 a.m., law enforcement officers attempted to contact LUO.  More specifically:

i.  Between approximately 6:17 a.m. and approximately 6:33 a.m., law enforcement officers placed 15 calls to LUO (the "Calls") by calling LUO on a number ending in 9268 (the "9268 Number").

ii.  Based on my review of documents and records produced by T-Mobile, I know that the 9268 Number is subscribed in the name of "Changli Luo."

iii.  At approximately 6:25 a.m., law enforcement officers knocked on the door to the LUO Residence and announced, "FBI, Search Warrant, [Unit Number of LUO Residence] come to the door".

iv.  At approximately 6:26 a.m., law enforcement officers sent LUO the following text message to the 9268 Number: "Hello, this is the FBI.  It is very important that you call me back at this number" (the "Text").

d.  LUO did not answer the Calls.

e.  LUO did not respond to the Text.

f.  LUO did not open the door to the LUO Residence.

g.  Two of LUO's neighbors, however, heard the commotion and did open the doors to their apartments.

h.  After approximately 20 minutes, at approximately 6:38 a.m., law enforcement officers entered the LUO Residence using a key they obtained from the building staff.

i.  When the door to the LUO Residence was opened, LUO was in a robe in the hallway between the living room and the bedroom and was walking towards the door.

5

j.   LUO was asked to step out of the LUO Residence and into the hallway of the apartment building so that law enforcement officers could conduct a safety sweep before the search.

k.   Pursuant to the warrant to search LUO's person, law enforcement officers searched LUO's person and recovered a rose gold iPhone (the "Rose Gold iPhone") from the pocket of her robe.

l.   While waiting for law enforcement officers to conduct the search of the LUO residence, LUO stated, in sum and substance, to the law enforcement officers who were accompanying her in the hallway, that Victim-1 "raped and assaulted me," and that Victim-1 "used his power to use you guys to come after me to intimidate me," indicating that LUO believed at the time of the search that the search was related to her conduct involving Victim-1, such as her threat to blackmail Victim-1.

m.   After a thorough manual search of the LUO Residence, law enforcement officers found the following electronic devices[1]:

    i.   A cellphone in a red case (the "Red Cellphone");

    ii.   Two voice recorders;

    iii.   A camcorder;

    iv.   Two computers;

    v.   A box of microphones;

    vi.   Two cameras;

    vii.   Two RAM drives;

    viii.   A portable hard drive;

---

[1] This list does not include other devices that were found elsewhere and through other means, as described in paragraphs 9(k) and 9(q).

ix.   Two thumb drives;

x.   Two SIM cards; and

xi.   One solid state drive.

n.   Several of the electronic devices listed above were concealed at the time they were discovered by law enforcement officers.  More specifically, law enforcement officers located the Red Cellphone hidden in a laundry hamper in the bathroom layered between dirty clothes.

o.   After completing their manual search of the LUO Residence, out of an abundance of caution, law enforcement officers ran a law enforcement canine, which had received special training to detect electronic devices by smell (the "Canine")[2], through the LUO Residence.

p.   The Canine alerted in front of a package of sanitary pads located in the bathroom of the Residence.

q.   Upon examining the package of sanitary pads, law enforcement officers discovered an iPhone with a purple case (the "Purple Cellphone") and two flash drives (the "Two Flash Drives") hidden amongst the sanitary pads.

10. Based on my participation in the review of the content of the electronic devices seized during the execution of the Search Warrants, and my conversations with other law enforcement agents regarding the same, I have learned the following in substance and in part:

a.   The Rose Gold iPhone, which was seized from the person of CHANGLI LUO, a/k/a "Sophia Luo," the defendant, contained the following in substance and in part:

---

[2] The Canine was certified as an electronic storage detection canine in March 2019 by the Connecticut state police through the New England State Police Administrators Conference. The training lasted approximately 10 weeks.  Since then, the Canine has participated in quarterly in-service training.  The Canine has also passed recertification every single year by an independent evaluator.  The Canine was most recently recertified in November 2024.  The Canine has participated in over 100 searches with a deployment rate of 85% and success rate of 65% recovering evidence for evaluation and further investigation.

i.    The Rose Gold iPhone is assigned the 9268 Number, the number that law enforcement officers called and texted in order to reach LUO on the morning of the search.

ii.    The call history on the Rose Gold iPhone reflected 15 missed calls from FBI special agents from between approximately 6:17 a.m. to approximately 6:33 a.m.

iii.    The messaging application on the Rose Gold iPhone also showed that the Rose Gold iPhone had received the Text that FBI special agents had sent her at approximately 6:26 a.m.

iv.    The call history on the Rose Gold iPhone reflected that at approximately 6:35 a.m. and 6:36 a.m.—approximately 9 minutes after receiving the Text, and just two and three minutes after the 15 missed calls from FBI special agents—LUO placed two outgoing phone calls.

b.    Based on the foregoing sequence of events, I respectfully submit there is probable cause to believe that LUO knew before law enforcement officers entered the LUO Residence that law enforcement officers were attempting to gain access into the LUO Residence for the purpose of conducting a search warrant in connection with an FBI investigation.

c.    Based on my review of the Purple Cellphone, which was hidden inside of a package of sanitary pads on the second shelf of a cart in the bathroom, I learned the following, in substance and in part:

i.    Several pornographic video and still images that appear to have Victim-1's face grafted on to the body of another man are saved to the photo library of the Purple Cellphone.

ii.    A video and image editing application is installed on the Purple Cellphone. In this editing application is a copy of what appears to be the same pornographic video (the "Fake Pornographic Video") that is also saved to the Purple Cellphone's photo library.

iii.    The Purple Cellphone has an encrypted messaging application called WeChat installed on the device. In the WeChat application is a message exchange entitled "Sophia

8

L" and the Chinese character for "self."  On or about March 29, 2025, in this message exchange, the user of another device sends the user of the Purple Cellphone what appears to be some pornographic images.  Later on the same day, the Purple Cellphone sends back in the same message exchange the same pornographic images, this time with Victim-1's face grafted on.  Then, on April 4, 2025, the Purple Cellphone sends the Fake Pornographic Video in the same message exchange.

        iv.   Based on my participation in the investigation, I know that the date of the above exchange, March 29, 2025, is the same day that LUO had instructed her attorney to convey to Victim-1 that if he did not pay her $50 million dollars she would distribute photos and videos of the Sexual Encounter and report criminal allegations to the federal government.

    11. Based on the foregoing, I respectfully submit that there is probable cause to believe that at the time that law enforcement officers announced their presence outside of the LUO Residence and their intent to execute a search warrant, LUO concealed and attempted to conceal, among other things, the Purple Cellphone, two thumb drives, and the Red Cellphone, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of CHANGLI LUO, a/k/a "Sophia Luo," the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

/s authorized electronic signature

_____
Lisa Scaglione
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 14th day of June, 2025.

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York